FILED
United States Court of Appeals
Tenth Circuit

November 17, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

TENCIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GEORGE JOHN KOUFOS,

Defendant-Appellant.

Nos. 10-2195, 10-2199, 10-2200

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. Nos. 1:10-CR-00586-LH-1 and 1:10-CR-00275-LH-1)**

---

Richard Winterbottom, Assistant Federal Public Defender, Office of the Federal
Public Defender for the State of New Mexico, Albuquerque, New Mexico for
Defendant-Appellant.

Laura Fashing, Assistant U.S. Attorney, (Kenneth J. Gonzales, United States
Attorney, with her on the brief) Office of the United States Attorney for the State
of New Mexico, Albuquerque, New Mexico for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **TYMKOVICH,** Circuit Judge, and
**FREUDENTHAL,** District Judge.[*]

---

[*] The Honorable Nancy D. Freudenthal, Chief United States District Judge
for the District of Wyoming, sitting by designation.

**FREUDENTHAL**, District Judge.

It is a federal crime for a convicted felon to be in unlawful possession of a firearm. 18 U.S.C. § 922(g)(1). Under the United States Sentencing Guideline Manual (USSG), the ordinary base offense level for such conduct is level 14.[1] However, if the unlawful possession occurred after the felon had a prior felony conviction for a crime of violence, the base offense level increases to level 20. The instant case is another in a series of cases asking us to determine if a particular prior conviction was for a crime of violence as defined by USSG §4B1.2.

Following a determination that Defendant George Koufos had a prior conviction for a crime of violence, the district court sentenced Koufos to a total term of 76 months' imprisonment for four offenses: felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and two charges of bank fraud in violation of 18 U.S.C. § 1344. According to Koufos, the district

[1]All USSG citations refer to the 2009 U.S. Sentencing Commission Guidelines Manual even though the offenses under consideration for sentencing occurred in 2006 (Vermont and New Hampshire Indictments) and 2007 (New Mexico Indictment). The Probation Officer reported that the 2006 and 2009 editions of the Guideline Manual were reviewed which reflected no changes, and therefore the probation officer applied the 2009 Manual for guideline computations.

-2-

court erred when it considered his 1990 conviction for a 1986 escape from custody as a crime of violence under USSG §2K2.1(a)(4)(A), and by imposing a procedurally unreasonable sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.
*Factual Background*
*1990 Conviction for 1986 Escape*

On March 26,1986, Koufos was arrested in New York by Agents of the Bureau of Alcohol, Tobacco and Firearms. ROA, Vol. 1, p. 28. Following his arrest and on the same day, Koufos escaped from custody at the United States District Courthouse in New York while awaiting arraignment. *Id*. Koufos was charged with escape by Information which states:

> 1. Defendant ... was arrested by Agents of the Bureau of Alcohol, Tobacco and Firearms on March 26, 1986 in New York, New York, based on an arrest warrant issued by the United States District Magistrate . . . on March 24, 1986 in Newark, New Jersey.
>
> 2. Defendant . . . did escape from custody of the Unites [sic] States District Courthouse, New York, New York, while awaiting arraignment after said arrest.
>
> 3. Defendant . . . did remain at large until his arrest on February 3, 1990.
>
> 4. On or about March 26, 1986, in the Southern District of New York, the defendant, while in custody of the Attorney General and his authorized representative, and while in custody under and by virtue of process issued . . . by the District of New Jersey [court], unlawfully, wilfully and knowingly did escape from the . . . Southern District of New York [federal court].
>
> In violation of Title 18, United States Code, Section 751(a).

-3-

*Id.* Title 18 U.S.C. § 751(a) provides as follows:

> Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense [be fined or imprisoned or both]....

*2007 and 2008 Charges*

In 2007 and 2008, three federal grand juries in different states returned indictments against Koufos. In 2007, a Vermont federal grand jury accused him of being a felon in possession of a firearm. Supp. ROA, Vol. 5, pp. 4-5. That same year, a New Mexico federal grand jury accused him of the same offense plus the charge of felon in possession of ammunition.[2] ROA, Vol. 1, pp. 4-5. In 2008, a New Hampshire federal grand jury returned a two-count indictment against Koufos, both counts involving bank fraud. Supp. ROA, Vol. 4, pp. 6-10

On February 4, 2009, Koufos filed an unopposed motion asking the district court to order a pre-plea presentence report (PSR) in anticipation of pleading guilty not only to the New Mexico indictment, but also to the New Hampshire and

---

[2]The Vermont and New Mexico indictments were based on different incidents and different firearms.

-4-

Vermont indictments.  Supp. ROA, Vol. 1, p. 9.[3]  The district court consented and a pre-plea PSR was prepared.  Id., p. 11; Supp. ROA, Vol. 3, pp. 3-37.[4]

*Plea Agreements*

Koufos was offered three separate plea agreements for the three indictments, with different approaches to the issue of appellate waiver:

The Vermont plea agreement contained no appellate waiver.  Supp. ROA, Vol. 1, pp. 16-22.[5]

The New Mexico plea agreement included a limited waiver of appeal as follows:

> The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a Defendant a right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's convictions and any sentence within the applicable advisory guideline range as determined by the Court; except that this waiver does not apply to any determination as to whether the Defendant's prior convictions constitute crimes of violence pursuant to the advisory sentencing guidelines.  Both the Defendant and the government reserve the right to appeal the district court's determination of whether the Defendant's prior convictions do or do not constitute crimes of violence. . . .

ROA, Vol. 1, p. 13.

---

[3]There are two documents designated as Supplemental Record on Appeal, Volume 1.  This reference is to Volume 1 of the Supplemental Record filed March 9, 2011.

[4]Interestingly, the Form 13 Pre-Plea PSR does not contain the description of the 1986 escape, but only describes the charges from the Information.  See, Supp. ROA, Vol. 3, p. 21, ¶ 69.

[5]This reference is to Volume 1 of the Supplemental Record on Appeal filed December 22, 2010.

The New Hampshire plea agreement also included a limited waiver of appeal as follows:

> By entering into this Plea Agreement, the defendant knowingly and voluntarily waives any right to appeal or to collaterally challenge:
>
> 1. His guilty pleas and any other aspect of his convictions, including, but not limited to, any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues; and
>
> 2. The sentence imposed by the Court if within the guideline range determined by the Court, or lower, or the Court's imposition of the minimum mandatory sentence. Supp. ROA, Vol. 1, p. 13.[6]

*Sentencing*

The district court held its sentencing hearing on August 17, 2010. Prior to and at sentencing, Koufos objected to the PSR which characterized his 1990 conviction for the 1986 escape as a crime of violence as defined by USSG § 4B1.2. ROA, Vol. 1, pp. 16-39, Vol. 3, p. 4. Characterizing the 1986 escape as a crime of violence resulted in increasing the base offense level for felon in possession from level 14 to level 20. USSG § 2K2.1(a)(4)(A). Four levels were added for the specific offense characteristic of use of a firearm in connection with another offense, aggravated assault. USSG § 2K2.1(b)(6). Under the multiple count adjustment, USSG § 3D1.4, level 24 was the combined adjusted offense

---

[6]This reference is to Volume 1 of the Supplemental Record on Appeal filed December 22, 2010.

level.  ROA, Vol. 2, p. 15.  After three levels were subtracted for acceptance of responsibility, the Probation Officer calculated the total offense level at 21.  Id. at p. 16.  Koufos' very lengthy criminal history accrued a total of 25 criminal history points,[7] which placed him in criminal history category VI.  As a result, the advisory guideline range for the multiple charges was 77 to 96 months in prison.  Without a crime of violence assigned to him, Koufos' advisory guideline sentencing range would have been 46-57 months in prison.

Consistent with Chambers v. United States, 555 U.S. 122 (2009), both Koufos and the government agreed that escape in violation of 18 U.S.C. § 751(a) is not categorically a crime of violence under the guidelines.  Under the modified categorical approach outlined in Shepard v. United States, 544 U.S. 13, 20 (2005), the sentencing court was charged with examining court documents to determine which part of the ambiguous escape statute Koufos was found to have violated.

Koufos argued he pleaded guilty to that part of 18 U.S.C. § 751(a) outlawing escape while in custody by virtue of a process issued by the United States.  Because the custody was by virtue of a process, Koufos argued that the custody was constructive and the escape was akin to a walkaway from a halfway house which is not a crime of violence.  The government disagreed, arguing the Information can be read broader to include a charge of escape from the custody of

---

[7]Koufos received no criminal history points for 29 of his convictions which include 14 felonies.

an officer or employee of the United States pursuant to lawful arrest. Under this reasoning, the government argued Koufos' plea and conviction was to a charge of escape from actual secure custody.

The district court considered the arguments and ruled that Koufos' 1990 conviction for escape was a crime of violence. The court viewed the Information as stating facts that Koufos was arrested on March 26, 1986 and, on the same day, while awaiting arraignment after the arrest and without the grant of any kind of release from the arrest custody by the magistrate judge, Koufos escaped from custody at the courthouse. ROA, Vol. 3, p. 9, 21-22. In commenting on these facts, the court stated, "[w]hen there is a prisoner in custody in a federal courthouse, it must be assumed as matter of fact as part of the language of this [Information] that there are people who are armed and who are there to prevent escape. So why isn't that a powder keg ready to explode when somebody attempts to escape?" Id. at p. 10. The district court concluded the conduct of Koufos presented a serious potential risk of injury to another and was, therefore, a crime of violence. Id. at p. 22.

In imposing its sentence, the sentencing court granted the government's downward departure motion which requested the court "depart down 20 months from the applicable USSG advisory guideline 20."[8]  ROA, Vol. 1, p. 83, Vol. 3, p.

---

[8]There is no "guideline 20."  This language may be a reference to the base
(continued...)

31. The court departed downward two levels (level 19), which resulted in a guideline sentencing range of 63 to 78 months for criminal history category VI. Id., p. 35-36. The court sentenced Koufos to 76 months in prison. Vol. 1, p. 98.

## II.
### *Analysis*

Koufos argues that the district court erred (1) when it held Koufos' escape conviction was a crime of violence under USSG § 2K2.1, and (2) by imposing a procedurally unreasonable sentence when it granted the government's motion for a 20 month guideline reduction, but it only reduced the guidelines by 14 to 18 months.

### A. *Waiver*

The Government may raise the issue of waiver of appeal in its principal brief, as it did here. United States v. Ibarra-Coronel, 517 F.3d 1218, 1221 n. 3 (10th Cir. 2008). We review de novo the question of whether a defendant's waiver of his appellate rights in a plea agreement is enforceable. Id. at 1221. We also strictly construe the appeal waiver and read any ambiguities against the Government and in favor of Defendant's appellate rights. Id.

---

[8](...continued)
offense level 20 under USSG § 2K2.1(a)(4)(A) which applies if the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense.

In determining whether Koufos' appellate waiver is enforceable, we consider the following three prongs: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice." United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir.2004)(en banc) (per curiam).  We conclude the disputed issues on appeal fall outside the scope of the waiver.

There is no dispute that all cases were consolidated for sentencing. Because of the consolidated sentencing, the PSR grouped together Koufos' two felon in possession cases (Vermont and New Mexico) as Group 1 and his two counts of bank fraud as Group 2 (New Hampshire).  This grouping was required to arrive at the greater adjusted offense level under the multiple count adjustment in USSG § 3D1.4.  The crime of violence issue is present only in the Group 1 cases, and the Group 1 cases represent the greater adjusted offense level of 24.

In terms of the Group 1 cases, there was no appellate waiver in the plea agreement governing the offense committed in Vermont.  There was a limited appellate waiver governing the offense committed in New Mexico, which specifically acknowledges that Koufos did not waive his right to appeal any determination as to whether his prior convictions constitute crimes of violence pursuant to the advisory sentencing guidelines.  The fact that the plea agreement for the New Hampshire bank fraud Indictment does not reserve the crime of

-10-

violence issue is inconsequential. That New Hampshire plea agreement not only represented the lower adjusted offense, but it concerned an offense governed by a guideline which has no crime of violence enhancement.

Therefore, we conclude the crime of violence issue falls outside the scope of the waivers in the only two plea agreements potentially affected by a crime of violence enhancement. Our conclusion of no waiver was also recognized at the time of sentencing when defense counsel advised the sentencing court that Koufos reserved "the right to appeal the escape question" and the court responded, "[t]hat's acceptable to me." ROA, Vol. 3, p. 42.

On the second appeal issue, procedural reasonableness, we also conclude this issue is not precluded by the appellate waiver. As noted above, the plea agreement for the Vermont Indictment contained no appellate waiver. Because the offense covered by the Vermont Indictment was within Group 1 and that group was the greater adjusted offense level group, the plea agreement for the Vermont Indictment controlled the outcome of Koufos' sentence. Therefore, Koufos may challenge the procedural reasonableness of the sentence he received.

*B. Crime of Violence.*

Whether a prior conviction qualifies as a "crime of violence" as defined by USSG § 4B1.2(a) is a question of statutory construction that we review de novo. United States v. Charles, 576 F.3d 1060, 1066 (10th Cir.2009) (citation omitted). When interpreting the guidelines, "we look at the language in the guideline itself,

as well as at the 'interpretative and explanatory commentary to the guideline' provided by the Sentencing Commission." Id. (citation omitted). "Commentary to the Guidelines 'is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.'" Id. (citation omitted).

Under USSG § 2K2.1(a)(4), the base offense level 20 applies if the defendant commits the offense of being a felon in possession of a firearm after he sustained a felony conviction of a crime of violence. The guidelines define a "crime of violence" as:

[A]ny offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –

    (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or

    (2)    is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct the presents a serious potential risk of physical injury to another."

USSG § 4B1.2(a).

Here the parties agree, and we concur, that the escape statute in question, 18 U.S.C. § 751(a), encompasses both conduct that would qualify as a crime of violence and conduct that would not. The Supreme Court previously discussed § 751(a)'s broad scope in the context of sentencing under the Armed Career Criminal Act (ACCA) and recognized that defendants are convicted under §

-12-

751(a) for crimes ranging from violent jailbreaks to non-violent walkaways to failures to report for incarceration or return to custody. See Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 172 L.Ed.2d 484 (2009).  In Charles, 576 F.3d at 1068, we recognized the need to reexamine the impact of Chambers on our prior holdings that all escape convictions are crimes of violence for purposes of the career offender provisions.  Because § 751(a) is overly inclusive by encompassing multiple crimes when some qualify as crimes of violence while others do not, we employ a modified categorical approach to determine whether the prior offense was a crime of violence.

Under a modified categorical approach, we examine "the statutory elements, the defendant's charging documents, plea agreement and colloquy (if any), and the uncontested facts found by the district judge to determine whether the particular defendant's conduct violated the portion of the statute that is a crime of violence." United States v. Wise, 597 F.3d 1141, 1144 (10th Cir.2010). This approach does not involve a subjective inquiry into the facts of the case; instead, we seek to determine "which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face." United States v. Sanchez-Garcia, 501 F.3d 1208, 1211 (10th Cir.2007) (internal quotation marks and citation omitted).

The parties agree that Koufos' prior escape conviction does not have as an element "the use, attempted use, or threatened use of physical force against the

person of another" under USSG § 4B1.2(a)(1) and is not one of the specifically listed offenses under § 4B1.2(a)(2) or the accompanying commentary. Thus, to determine whether Koufos' escape conviction constitutes a "crime of violence," we are called upon to engage in a two-part inquiry. First, we consider "whether the offense 'presents a serious potential risk of physical injury to another,' as required by the text of §4B1.2." Wise, 597 F.3d at 1144 (quoting USSG § 4B1.2(a)(2)). Second, "we must determine whether the offense is 'roughly similar, in kind as well as degree of risk posed,' to the enumerated crimes in § 4B1.2(a)(2), namely, burglary, arson, extortion, or crimes involving explosives." Id. (quoting Begay v. United States, 553 U.S. 137, 143, 128 S.Ct. 1581, 1585, 170 L.Ed.2d 490 (2008)). A crime is "'roughly similar'" to the crimes listed in § 4B1.2(a)(2) if it "'typically involve[s] purposeful, violent, and aggressive conduct.'" Wise, 597 F.3d at 1144 (quoting Begay, 553 U.S. at 144-145) (alteration in Wise)).

This two-part inquiry is derived from the Supreme Court's decision in Begay. There, the Court addressed a challenge to a provision of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B),[9] that mandates a 15-year prison

---

[9]Under the ACCA:
[T]he term "violent felony" means any crime punishable by imprisonment or a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that-
(i) has as an element the use, attempted use, or threatened use of physical

(continued...)

-14-

term for felons in unlawful possession of a firearm who have three prior convictions for a violent felony or serious drug offense. Rejecting the Government's argument that failure to report showed "the offender's, special, strong aversion to penal custody" as "beside the point," the Court reiterated that the core inquiry is "whether such an offender is significantly more likely than others to attack, or physically to resist, an apprehender, thereby producing a 'serious potential risk of physical injury.'" Chambers at 692 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)).  The Court also rejected an interpretation of 18 U.S.C. § 924(e)(1)'s residual clause that would allow all crimes presenting a serious risk of physical injury to qualify as a violent felony under the reasoning that certain crimes (such as driving under the influence) "need not be purposeful or deliberate." Begay, 553 U.S. at 145.  Instead, the predicate offense must be "roughly similar in kind as well as in degree of risk posed" to the example crimes of burglary, arson, extortion, and the use of explosives. Id. at 143.  The listed crimes "all typically involve purposeful, 'violent,' and 'aggressive' conduct"

---

[9](...continued)
force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another. 18. U.S.C. § 924(e)(2)(B).  Thus, the only difference between § 924(e)(2)(B)(ii)'s residual definition of a violent felony and USSG §4B1.2(a)'s corresponding definition is that the latter lists "burglary of a dwelling" rather than "burglary" as an example of an offense that "presents a serious potential risk of physical injury to another."

-15-

rather than simple negligent or reckless conduct, with the listed crimes of burglary and arson in particular revealing "a degree of callousness toward risk." Id. at 144-145; 146.

Begay was followed by Sykes in the continuing effort to address the question of what crimes count as "violent felon[ies]" under the ACCA. Sykes v. United States, __ U.S. __, 131 S. Ct. 2267, 180 L.Ed.2d 60 (2011). Sykes' predicate felony was vehicular flight, which the Court concluded is a violent felony for purposes of the ACCA. The Court reasoned that defying a law enforcement command by fleeing in a car shows an indifference to the safety of property and persons which has "violent - even lethal - potential for others." Id. at 2273. Further, comparing vehicular flight to the crime of burglary, a crime which "is dangerous because it can end in confrontation leading to violence," the Court concluded that vehicle flights "by definitional necessity occur when police are present," "is a direct challenge to an officer's authority," and "is a provocative and dangerous act that dares, and in a typical case requires, the officer to give chase." Id. at 2273-2274 (referencing James v. United States, 550 U.S. 192, 200, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007)). In addressing Begay, the Court noted that vehicular flight is not like driving under the influence, which the Court analogized as "a strict liability, negligence, or recklessness crime." Id. at 2276.

-16-

Koufos argues the Information charging the escape does not specify that he was "under arrest" at the time of his escape, which would suggest he was in secure actual custody of an officer of the United States. Rather, Koufos escaped "after said arrest." Relying on <u>Charles</u>, 576 F.3d 1060, Koufos argues he violated only that portion of § 751(a) making it a crime to escape from custody under or by virtue of any process issued under the laws of the United States by any court, judge, or magistrate judge which is not a crime of violence but rather is tantamount to walking away from constructive, nonsecure custody such as a halfway house. We disagree.

The facts from the Information disclose a wilful act committed by Koufos in a purposeful manner which is more provocative than a burglary. Koufos was arrested and taken to a federal courthouse for arraignment. He escaped "while in custody of the Attorney General and his authorized representative." ROA, Vol. 1, p. 29. He did not merely escape from custody by virtue of a process issued by a court.

Because of this we conclude Koufos' escape was significantly more dangerous behavior than the failure to report considered in <u>Chambers</u>. It could easily have ended in a confrontation leading to violence. Indeed, the escape was a direct challenge to those federal officers charged with his custody while awaiting arraignment. Like the vehicular flight considered in <u>Sykes</u>, escape from federal a courthouse after arrest is a purposeful, provocative and dangerous act

that dares, and in a typical case requires, law enforcement officers to seek him out or give chase, potentially ending in a violent confrontation. Such a situation makes the escaping offender "significantly more likely than others to attack, or physically to resist, an apprehender." Chambers, 555 U.S. at 128-129. Therefore, we conclude that Koufos' predicate conviction for escape while in custody of the Attorney General or his authorized representative, in violation of 18 U.S.C. § 751(a), qualifies as a crime of violence.

*C. Reasonableness of Sentence.*

We review a criminal defendant's sentence for reasonableness, deferring to the district court under the "familiar abuse-of-discretion standard of review." Gall v. United States, 552 U.S. 38, 46, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). Reasonableness review has a procedural and a substantive component. This case concerns Koufos' claim of procedural error, specifically that the district court failed to explain why it only reduced the guideline sentence by 14 to 18 months after it granted the government's motion for a 20 month guideline reduction.

A court may commit procedural error in imposing a sentence by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." Id. at 51, 128 S.Ct. 586. A sentence imposed within the properly calculated

advisory range is entitled to a rebuttable presumption of reasonableness. <u>United States v. Sanchez-Juarez</u>, 446 F.3d 1109, 1114 (10th Cir. 2006).

In reviewing the record, we conclude the district court gave a procedurally adequate explanation for its two level downward departure and its sentence of 76 months imprisonment. The government recommended the court "depart down 20 months from the applicable USSG advisory guideline 20." There is no "guideline 20." The sentencing court commented that it seriously considered not granting the government's motion for downward departure because of Koufos' criminal history, but it would do so. ROA, Vol. 3, p. 38. As to Koufos' criminal history, the court remarked:

> I've been on the bench for nearly 18 years. I've never seen a Presentence Report that has the defendant having been convicted of so many felonies. Thirty-seven. That's over his lifetime. He's lived a lifetime of crime. Only in those cases involving continual reentry into the United States by illegal alien[s] have I seen so many aliases, Social Security numbers, everything else that indicates a life of crime. A life of crime has resulted in 37 felony convictions. I don't know how many years this man has been in prison, but it's a lot . . . . I have serious doubts that this man is going to change ever, ever, ever.

<u>Id</u>. at pp. 36-37.

There is no procedural issue here. Rather, Koufos' complaint is that the district court should have reduced the top and the bottom of the guideline range for offense level 19, criminal history VI, to arrive at a new range of 57 to 76. However, that result is not a recognized guideline range. Applying the 20 month motion for downward departure to the bottom of the otherwise applicable

guideline range would have resulted in a three level reduction to offense level 18

(57 to 71 months at criminal history category VI).  Applying the 20 month

reduction to the top of the guideline range would result in a two level reduction to

offense level 19 (63 to 78 months).  Considering the court's statement about

Koufos' life of crime, the record is clear that, if any departure would be

permitted, the reduction would come from the top of the otherwise applicable

guideline range:

>    [DEFENSE COUNSEL]: What did you say the guideline range was, Judge, with the departure?
>    THE COURT: With the departure, it is 63 to 78.
>    [DEFENSE COUNSEL]: I think that it is 57 to 76.  Because it would be – if he's 77 to 96.
>    THE COURT: Yes, originally.
>    [DEFENSE COUNSEL]: And 20-month departure for the 5K1.1 would be 57 to 76.
>    THE COURT: Is that right?
>    [PROBATION OFFICER]: Your Honor, if you're going to go to the low end or the high end.  If it's the low end of the guidelines, it needs to be brought back another level, it is three levels to an offense level 18.  And his guideline, if you bring him down three levels to an offense level 18, would be 57 to 71 months.
>    THE COURT: I'm having difficulty hearing you.
>    [PROBATION OFFICER]: It depends what the recommendation is. If it is low end of the guideline, he would need to be brought down to three levels to get him at an offense level 18.  Criminal History Category VI. And that's 57 to 71 months.
>    If the recommendation is high or midrange, two levels would bring him to an offense level 19, Criminal History Category VI, and that's a 68-to-79 month range.
>    THE COURT: All right.

ROA, Vol. 3, pp. 35-36.

Koufos' view that the court erred by "[d]iscussing reduction in terms of levels rather than the government's straightforward motion" lacks merit. There was nothing straightforward about the government's motion. Further, that argument speaks to the substantive reasonableness of the sentence, not to procedural error. However, as to Koufos' argument that the court failed to adequately explain the chosen sentence, we conclude the district court committed no significant procedural error.

## III.
### *Conclusion*

The judgment of the district court is AFFIRMED. Appellant's motion to seal the briefs is GRANTED.